Good morning. May it please the Court, I'm Francesca Ugolini, counsel for the Commissioner of Internal Revenue, and I'm joined today by my colleague Art Catterall at counsel table who will be arguing the next case, the Salus Mundi case, on behalf of the Commissioner. The issue in this case is whether the Sloan Trusts are liable as transferees for the unpaid federal income taxes of Sloan Broadcasting. Transferee liability is determined under a tax court reached only the first step. The first question is were the Trusts transferees of Sloan Broadcasting within the meaning of section 6901 of the Internal Revenue Code? The second question, which the tax court did not reach because it ruled against the Commissioner on the first question, is if the Trusts were transferees, were the transfers to them fraudulent under the Arizona Uniform Fraudulent Transfer Act? So we'll talk about those issues in the next case, right? Correct. Good. Okay. One thing at a time. That's perfectly fine. Here, the primary issue on appeal is whether the tax court erred in its application of the substance over form doctrine in deciding the first question against the Commissioner. The answer to that question turns on whether the stock sale was truly a stock sale. And the tax court here held that it was only because it misapplied the substance over form doctrine as that doctrine has been developed by the Supreme Court and by this Court. Decisions from the Supreme Court and this Court, which we listed in our brief, have made it clear that in determining the substance of a transaction, the focus is on the objective economic realities. So in Redham, which I think is our most recent word on the subject, we said there are two prongs. There's a subjective aspect of whether the taxpayer intended to do anything other than acquire tax deductions and the objective aspect. And then we went on to say, but we take a holistic approach and look at the objective aspect. So I'm not sure if we have three prongs or two prongs, but don't we also look at the subjective aspect under Redham? I have not read the Redham case, but what Your Honor is describing to me sounds like the economic substance doctrine, which was not the doctrine that was argued by the or that was applied by the tax court in this case. In fact, the commissioner had late in this brief raised the economic substance doctrine and the tax court said it was too late to raise it and didn't consider it. What's the difference between economic substance and form over substance? Aren't they the same test? I mean, we're looking at what the actual economic reality was of the transaction. Courts have acknowledged that there is a lot of overlap between these various doctrines. Doctrines like sham partnership, sham transaction, or the economic substance doctrine, and the form over substance doctrine. The latter, the first two, the types of sham transaction doctrine, such as the economic substance doctrine, they look primarily at did something happen or was this a tax nothing? Because it was so motivated by tax avoidance and the features were so meaningless that this is a tax nothing. Whereas the substance over form doctrine sort of disregards motives, disregards the tax avoidance aspects of the transaction and says, well, what really happened here? What was this transaction? And I'll direct the court to the Solberger case, which we described in our brief. The issue in that case was whether a transfer of a particular kind of financial instrument, whether it was a lease or a sale. And the court focused exclusively on the objective sort of features of the arrangement. Who bore the risks and rewards of ownership? What were the terms of the agreement to decide whether it was a sale or a lease? And the taxpayer there had structured it as a lease. This court ultimately held that it was a sale. And having identified what type of transaction it really was under substance over form, this court then said, well, the tax consequences flow from what it really is. It wasn't a tax nothing, but it was a sale. And so the tax consequences that attach are a sale. And the commissioner's argument in this case is that that's what we're looking at here. There was a real transaction here. Money changed hands. But the question is, was it a stock sale? Stock ownership represents equity in a going concern. It entitles the holder to the upside potential of the business venture and exposes the holder to the downside risk of the business venture. The district court, I mean the tax court, did the tax court make any findings about the actual substance, the economic substance of the transaction? In its recitation of the facts, I mean in terms of sort of the underlying features of the transaction, they were largely undisputed. There was a stipulation of facts, and there was a stock purchase agreement, and so it's all laid out there. The tax court, however, didn't really incorporate any of those undisputed facts in its ruling regarding substance over form. So the court was actually just focusing on whether the shareholders could have known that this was illegal or an unlawful tax evasion scheme, which doesn't seem necessarily relevant to at least not to that second prong of economic substance. That's correct. The tax court here essentially, the two main underpinnings of its holding were that the asset sale that preceded the stock sale was not tax motivated, and that was undertaken without any sort of tax planning in mind, and the commissioner conceded that that was the case. And then the tax court acknowledged, which is also undisputed in this case, that the trust understood that they were transferring cash, they were getting a cut of the tax dollars because those taxes would go unpaid because the buyer claimed to have a strategy to offset $38 million of taxable gain. So the tax court recognized that the trust knew the taxes wouldn't be paid, but found that, well, they had no duty to inquire further, which is a proposition the Second Circuit has now rejected, and there are legitimate tax strategies out there possibly, although neither the Sloans nor the tax court identified any, and because of those possibilities and because of the lack of duty to inquire, the tax court found that they didn't know that an illegitimate shelter would be used to offset the $38 million, and because of that, it would respect the form of the transaction. And we submit that what the trusts knew or understood is not relevant to the objective economic realities of the transaction. But when I look at the Supreme Court cases, starting with the very old ones, they are looking at what the taxpayers thought was the purpose of the transaction and whether they intended it to be for legitimate business purposes. That seems to be intermingled with their review of the objective factors. That is, well, I would direct the Court, the most recent Supreme Court case dealing with the Frank Lyon case, and the Court there did acknowledge that the structure was undertaken to obtain particular tax benefits, but it said the motives don't matter because we're going to focus on the, we look at the objective economic realities of the transaction. And in that particular case, the Supreme Court respected the form of the transaction because it found that even though the parties had some tax avoidance motive, there was an economically real transaction that matched the form. Well, assuming that we look at both, both what the people who entered into the transaction had in mind and the objective factors of the nature of the transaction, what I'm struggling with is, is this a legal question? Could we say as a matter of law, this could never be for legitimate business purpose? Or is it a mixed question of law and fact? Or is it a factual question? And do we need, would we need to remand to the tax court to make sure that the findings that Redham seems to suggest are needed? Well, the Supreme Court in Frank Lyon held that the ultimate characterization of a tax, of a transaction for tax purposes is a legal question reviewed de novo. And this Court has acknowledged that as well in, I can grab my replies as, the general characterization of a transaction for tax purposes is a question of law subject to review, even though the facts are unambiguous. So it seems like a mixed question where some factual, at least factual issues need to be determined by the tax court. So I guess, are there any fact issues that, that are left to be determined? In terms of the economic realities of the transaction, I mean, if you just focus on the economic features of this transaction, again, the facts are, are undisputed. Most of them were stipulated and then the transaction documents are in the record. And, and, and I guess the, the facts that I'm speaking of are the facts that Sloan Broadcasting carried on no further business activity. That was undisputed. That it held no assets other than cash. That was undisputed. It had no debts other than the tax debt. There were no employees. Those objective features of the transaction are all undisputed. And so those, I think those are the things that are the sort of factual underpinnings of the ultimate characterization. And in this case, I don't know, I don't think the court needs to remand for factual findings because those matters are undisputed. Now the issues that, that might require a, a trial court to make factual findings about might be, are issues such as motive or knowledge to the extent those things are relevant in the analysis. And of course, we submit that they, that they are not relevant to the analysis. Even if they are, they cannot overcome the objective economic realities. But the court already made those findings here. I understood you. I understood you to say a few minutes ago that in effect the tax court didn't get to the actual practical economic realities other than creation of the tax laws. You say, said it was too late? Well, no, I, I, the tax court acknowledged the undisputed facts regarding the economics of the transaction, but didn't incorporate any of those facts into it, into its analysis. Did not explain how those facts affected the substance over form analysis and, and frankly disregarded them. If you look at this court's opinion in Truesdale, which we discussed in our brief, and the Sixth Circuit opinion in Owens, both of those cases involved facts very similar to this case. In Owens, they were deferring to the tax court. I mean, that's, they, I, I didn't see an opinion that says as a matter of law, this type of transaction has no economic reality. Well, again, it's, we're not, we're not saying it has no economic reality. We're saying it's a liquidation and not a stock sale. And also the, the facts in that case Well, the form of this, because the form was they sold shares and they got payment for the shares. But the shares represented nothing but the right to withdraw cash from a liquid bank account. I know that's your argument, but there's not a case that says it's a matter of law, which is what you're saying, this is a matter of law, that's a matter of law. That's, that's the required conclusion. Well, I think in, in Owens and in Truesdale, there were, there were factual issues that were resolved, but once the court got to those particular, particular factual findings, the ultimate characterization that was determined was that this is a liquidation. In this case, again, those underlying facts are undisputed, which leaves the court then to make its ultimate characterization of the transaction, which, which is a legal question. There aren't many cases on point because this is a type of transaction that people don't usually engage in. Even one of the trust advisors acknowledged that he'd never before seen selling cash for cash, because this is, this is not a normal business transaction. I see that I have only three minutes left, and I'd like to save that time for rebuttal unless the court has other questions. May it please the court, I'm Steven Silver from Phoenix, Arizona. I'm with Eric Kaczmarek representing the Sloan's. I, I, I'm going to put aside my outline and, and address the first issue of substance over form, and I agree that economic reality is a subset of substance over form. When you go back to Genesis and go back and read all the Supreme Court cases, you find that they use a simple analogy, and that is that when you look at these issues, it's like peeling an onion, one piece at a time. This particular trial judge peeled that onion based upon a stipulation, which is mandated under Rule 91 of the Tax Court Rules of Practice, where we are required to stipulate the facts, and we stipulated to over 150 documents. Ten witnesses testified. It was a lengthy trial for a tax court proceeding. Now let's look at substance over form, and I might note that when preparing for this argument, I read the Ninth Circuit memo guide, and I came upon two cases that I did not cite. One was a case called Custom Chrome, and then the other case was, was cited, and shepherdized, was a case called Rubino, and in both those cases, the Ninth Circuit said that substance over form is subject to clear error, that that's a fact and circumstance analysis. I need to, to provide citations, unless you serve, provided copies of those cases to opposing counsel, you should give a note to the clerk at the end with, with those citations. I will, Your Honor. I, I just came upon them within the last few days and didn't think I was allowed to supplement with a 28-J letter. Now, I, I. Are you, excuse me, but are you familiar with the Radom case? Opposing counsel was not. No, I'm. A recent case. No. In the Ninth Circuit, 755 Federal 3rd, 1051 at 1059, and there this court said that it's not a rigid two-step analysis, but focuses holistically on whether the transaction had any practical economic effects other than creation of income tax losses. Can you tell us what practical effect, economic effects this transaction had other than creation of tax losses? Absolutely. All right. I want to first go back and say there's one document, every trial has a hot document, and the hot document in this case was the Phillips Memorandum, which is in the record at ER 174. That's Exhibit 26J. Now, Mr. Phillips, if you would Google him, he is a very prominent, well-known lawyer in Arizona, had been a tax professor at the U of A, and he basically wrote this memorandum out to set forth what he understood the transaction to entail, and, and in it, he put forth basically the business purpose for this company called Midcoast that was going to be involved in the transaction, and, and to start out with it, you had a business purpose. You had a company that at that point had cash. It sold its, its, its radio stations. There was no effort when they sold the radio stations to attempt to avoid, defer, or anything with the tax. They were going to operate in the future. They were going to go out and buy another radio station. There was no covenant not to compete. There was no restriction on the use of the name. But after the first transaction went through, Fortran comes along and says, we have somebody that's interested in your cash, and they have a value for that cash, and they will pay for that cash, and they had an economic purpose, and the economic purpose was they were in the debt recovery business. The debt recovery business goes out and buys credit card debt, and they buy it for pennies on the dollar, and then they turn around and try to collect on it. In some instances, their credit card debt, they can't realize what they paid for it, and so that company has losses, what is called built-in losses. The Internal Revenue Code at the time, and this was detailed in the Memorandum of Mr. Phillips under Section 351, permitted then that you could transfer an asset that had a loss. It was, you paid $100,000 for it, it was only worth $10,000. You could transfer it to a corporation under the law then, and then when you liquidated that asset, you had a $90,000 loss. That's an example, and that could be offset against the gain. That's a Section 351 transaction. Congress in 2004, three years after our transaction says, we're going to change the law. We're not going to allow that to happen. So this is a case where under the existing law, there was a code provision, a tax strategy if you will, to permit this. No different than Diebold recognized in one of the footnotes, there are permissible tax strategies. No different than three separate tax court cases recognized, and one of the big mantras of the government in this case has always been, there's been no tax strategies. All they had to do is review Steve Phillips' Memorandum that set forth what we believe the tax strategy. So in answer to your question, Your Honor, we believe that that answers it. Now, what happens, practically speaking, because taxes do trigger and drive some businesses in their decision, is this debt recovery business could buy cash at a discount and use that cash in their business, and why they could do that is that they had built-in losses that they could then transfer to offset those gains. That was the laws that existed then. Now, I want to talk about a couple of additional facts because tax strategies, there was one. There was no proof of circular flow of money. There was put in evidence, again, as indicated, we are required to stipulate the documents and facts in tax court, and we did. And there was a document which was an opinion of the Buyer's Council that we stipulated to. And in the stipulation, the stipulation starts off and it specifically says, all evidentiary objections are waived unless specifically expressed in the stipulation. In the stipulation, this particular document, which was document 54J, appears in the record at 270, this document referenced the fact that there was an $18 million infusion of air, separate cash. Now, that's similar to what the Starnes case found in their footnote because they upheld the tax court where they found a separate infusion of cash. Significantly at the trial, the government calls a banker because the government was alleging all this was just circular flow of money. It wasn't. They didn't prove it. The banker said we expected that we were going to be repaid with the money that was being held by Sloan. So I hear your argument about why there's some economic substance. Are we the right court to make that determination? I mean, the tax court, its findings and its rulings seem to be based on could the Sloans have known that what Berlinetta was doing was illegal tax evasion, not just a tax avoidance. That doesn't seem to be, I suppose if they had known or if it had been illegal tax evasion, that might indicate that there was an economic substance, but it doesn't seem dispositive of the issue. Now, opposing counsel says we can decide now based on the facts, the undisputed facts that this, as a matter of law, there was no economic substance. Obviously, you disagree, but did the tax court address that issue in its ruling? Well, first of all, the economic substance was never raised by the government. We're required in tax court, like most courts, to provide the court with a memorandum of what we're going to be discussing, and here are the four corners of the pleadings. They never raised economic substance. And when they raised it at the 11th hour, the court said, you didn't raise it timely, and therefore, I'm not going to consider it. Well, I'm sort of still struggling, then, with if you're making a form over, a substance over form argument, you have to say that the substance, that the form had no reality and that the substance was something else. So they made that argument before the tax court. You're absolutely right, Your Honor. We think the transaction as it was presented, not with the benefit of hindsight. With hindsight, this transaction would not even get past the front door. But that wasn't the case, then. Fortran was a legitimate company, at least was viewed as a legitimate company. They had legitimate lawyers. We had lawyers look at it from our standpoint. Two very capable lawyers looked at it. A buyer's lawyer looked at it. And so the transaction made economic sense. There was business purpose based upon this was a debt collection business. You cut the cloth to fit the baby. And it made sense as it was presented. Now, what happened after the fact, of course. And did the tax court make any ruling on that point? Yeah, the tax court basically, first of all, the government pushed for substance over form. This was their theory. We don't want you to look at state law. We want, and you know what we said? On the first prong, okay, we're looking at the first prong. Yes, ma'am. Whether Sloan was a, the shareholders were transferee. And there we do look at federal law and whether it's substance over form, right? Absolutely. And so they're saying it's a company sitting on a pile of, it's just a shelf of company with a pile of cash. In exchange for the cash, the shareholders got cash. So that's in essence their argument. But I didn't see the tax court ruling on that issue. Was that argued to the tax court? Yes, that was argued. Again, all the facts were argued. The court argued all the facts. And the court, in essence, with the Supreme Court opinions being the guide, peeled the onion. And looked at various factors. Looked at this memorandum of Phillips. Looked at the circular flow of money. Looked at the other issues that came of constructive knowledge. It was believed this was a legitimate transaction. And it was not known that this company was going to engage in an illegitimate tax scheme. The only thing the tax court looked at is whether the Sloan's, the shareholders could determine that the deal was legitimate or not. But I don't know that that means that there's economic substance to the deal. Does it, in your view? I mean, they, the tax court did consider whether the tax strategy was unlawful. Whether the Sloan's deal was unlawful. Judge, I think if we're going to go back, and this is a policy question, and go back and have judges sit later and say, I'm going to, I'm going to, with hindsight, indicate this really did make sense economically. But at the time the transaction's being presented, lawyers are going over it and giving clients advice. So you think that if a, if a particular transaction is not a lawful tax evasion, then per se, that transaction has economic substance. That's the, that's a reality. There's economic reality to what the, the shareholders did. Is that your view? Judge, this transaction, as presented, had economic- Is that your view? Yes, my view is it had economic reality based upon that memorandum. Because this was represented as a debt recovery business buying this cash at a discount, and they were going to use it in their business. The tax law permitted this debt recovery business to transfer assets that had a high basis, $100,000, and it was only worth $10,000, and then offset the gain. So you had a business situation- So was the only purpose of the transaction to minimize taxes? Well, the purpose of the transaction- And what you're saying is that it was lawful to minimize taxes in this way. But that doesn't necessarily say there's a business reason there's an ongoing business. The, the, the business reason for us is there's nothing wrong with maximizing your profit. We had a separate trustee representing a trustee who had separate counsel. And they looked at the transaction and they said, hey, this returns to us a maximum amount and, and the tax comes into play. There's nothing wrong with maximizing profit on a transaction. So from our standpoint, from our standpoint, the Sloans, yes, they were going to get back net more money than they would otherwise have got back. Now remember, at the time, there was no tax play in, in place. The Sloans paid an estimated tax payment of $4 million, right? They intended to pay another estimated tax payment come December if this transaction did not come down, and they were going to continue in the business. This came along, it was presented to them as a business transaction. The buyer had a business purpose for the transaction. And taking the quote from the Sword case, which recently was decided, and it described the Sloan case and did a better job than I did in my briefs. Essentially, that court said, there's nothing wrong with going and, and engaging in signing a transaction if you think it's legitimate. But we can't go back with hindsight and upset transactions. Otherwise, this country would come to a standstill. So, so Judge, just going back and going full circle. I, I start out with the Supreme Court cases, the same ones they do. And, and I'm peeling the onion. They only want to look at one or two factors, but you have to look at all the factors because this is a substance over form analysis. We conceded that. We stipulated that. Now, the facts, and, and I know we're not here to address the state problem, because the government now has finally conceded that has to be remanded. But, but the facts support us on the insolvency argument too, which is in the brief, with respect to the $18 million. And no hearsay objection was reserved as it related to that document. And at trial, the government lawyer said, I have no objection of the document. And then I was allowed to examine the government agent and go, what did the government agent say? You, you served a subpoena upon the lawyers for their file, yes? Did you see this letter? Yes. Did you do anything to follow up on the source of the $18 million? No. And just like Starnes, where Starnes wasn't taxpayer victory on appeal. We had a couple other circuits that have had different results, not necessarily defeats, but Starnes said there was an infusion of money. Just like that, this judge found there was this $18 million infusion of money. And, and, and I note that one thing that just stuck out to me, and I was aghast, because I tried the case. Government calls this banker, and the banker said, well, we expected to get repaid. The circular flow of money is an important issue in these cases. But guess what? He never testified they got repaid from the Sloan money. And guess what? The government never offered in evidence the underlying bank records of Rabble Bank. You're out of time, could you stop that, please? No, ma'am, I, I'm done. I'm, I need more time, but that's fine. I got my point. Thank you for your courtesy. Thank you. I'd like to respond to my opposing counsel's argument that, under the laws that existed at the time of the transaction, that there were permissible ways to offset the $38 million gain with whatever losses may have existed from a debt recovery business. This simply is not the case, and in fact, the Sloans have actually never argued that in this case. They've argued that they thought there were ways, but no one has ever argued in any one of these cases that there actually was a real way to do this, and there wasn't. If you look at the law and the cases discussed on page 52 to 53 of our brief, there were two statutes, Internal Revenue Code section 269 and 482, that would have disallowed the tax benefits claimed in this sale, because the, the primary purpose for the sale was to obtain tax benefits. The Sixth Circuit recognized in the Owens case, which was 1977, that there was. Does it matter for purposes of, of the first prong, whether they're a transferee, whether it was a legitimate transaction, and to whether they could get the tax benefits, I mean, arguing with the tax court? I mean, does that matter? No, it, it doesn't matter, Your Honor. You're correct that it doesn't matter. I just wanted to respond to that point, to clarify that point. Well, let me ask you this. If the tax court judge said specifically, I find that this transaction had practical economic effects, other than creation of income tax losses, would that be a factual finding for review or, or legal? I'll direct the court to this, the, this is page four of our reply brief, and we're quoting here from the Ninth Circuit's case in Sachs, 1995, that was attempting to sort of reconcile what different cases had said about the standard of review here. Again, in 1978, the Supreme Court in Frank Lyons said that the general characterization of a transaction for tax purposes is a question of law subject to review, although the particular facts from which the characterization is to be made are not so subject. This court, then in the Sachs case, 1995, said we reconcile these authorities by construing them to mean that the underlying factual determinations are reviewed for clear error, but the correctness of the legal standards applied by the tax court and the application of the legal standards to the facts found are reviewed de novo. I think under that articulation, an ultimate determination that there's economic reality is, is a question of law reviewed de novo. But, but that sort of begs the question, right? I mean, Judge Alberton says, is practical economic reality a question of fact or a question of law, and what you read said, well, if it's a question of law, we review it de novo. I mean, that doesn't really help us. Yeah, but, but I think that, that, that sort of catchphrase, practical economic reality, I mean, that is, that is the ultimate legal, that is the ultimate question that is, that courts are trying to answer in each case. And so I think that is, that is the ultimate characterization. The underlying facts are, are issues such as, what did the documents mean? What did the documents say? What did people do? So you're saying he'd need to say, these are the facts that lead me to, to conclude that the, there were economic realities, economic facts, other than tax law. Those facts would be reviewed for clear error, but the ultimate determination that those facts lend economic reality is, at the very least, application of law to the facts, which is reviewed de novo under SACS. Your time's expired. Thank you. Thank you. Thank you for your arguments. The case of Sloan versus Commissioner is submitted, and we'll next hear argument in Salas Mundi Foundation versus Commissioner.
judges: Albritton, Noonan, Ikuta